# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID. No. 1511006774A/B |
| | ) | |
| KEVIN COLEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of the Commissioner's Report and Recommendation Denying Defendant's Motion for Postconviction Relief:*

## ACCEPTED.

*Upon Consideration of Defendant's Motion for Postconviction Relief:*

## DENIED.

John S. Taylor, Esquire, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *Attorney for the State of Delaware*.

Patrick J. Collins, Esquire, COLLINS, PRICE & WARNER, Wilmington, Delaware, *Postconviction Counsel for Defendant*.

**RENNIE, J.**

# INTRODUCTION

On April 29, 2016, a jury found Kevin Coleman ("Coleman") guilty of Carrying a Concealed Deadly Weapon ("CCDW") and Resisting Arrest, arising from a disturbance call and subsequent arrest.[1] Coleman was sentenced to 23 years of unsuspended Level V time.[2] He now moves for Postconviction Relief under Superior Court Criminal Rule 61 ("Motion").[3] This Memorandum Opinion addresses his Motion, the Commissioner's Report and Recommendation[4] ("Commissioner's Report"), and his Appeal from the Commissioner's Report and Recommendation ("Appeal").[5] For the reasons set forth below, the Commissioner's Report is accepted on separate grounds, and Defendant's Motion for Postconviction Relief is denied.

## FACTUAL AND PROCEDURAL HISTORY

### A. Factual Background[6]

At around 9:30 p.m. on November 11, 2015, Wilmington Police Officers Michael Saint-Vil ("Officer Saint-Vil") and James Wiggins ("Officer Wiggins")

---

[1] D.I. 24.
[2] D.I. 15.
[3] D.I. 51.
[4] D.I. 59.
[5] D.I. 63.
[6] These facts are drawn from Officer Saint-Vil's and Officer Wiggins' testimony at trial. (All references to the Appendix provided by Postconviction Counsel to Coleman's Amended Motion are hereinafter referred to as "A__").

received a dispatch call while on patrol regarding a disorderly person in front of 901 Spruce Street.[7] The caller described the person as a black male wearing an all gray jumpsuit.[8] When officers responded to the scene in their fully-marked police car, they encountered Coleman who fit the caller's description.[9]

Officer Saint-Vil got out of the police car and shouted, "Hey, can I talk to you for a second?"[10] Upon noticing the officer, Coleman mounted his bicycle and began to ride away causing Officer Saint-Vil to chase him on foot.[11] Officer Wiggins followed behind in the police car.[12]

Officer Saint-Vil briefly lost contact with Coleman, but quickly regained sight.[13] Coleman failed to obey Officer Saint-Vil's orders to stop.[14] Because Coleman kept reaching on the right side of his body to the waistband of his pants, Officer Saint-Vil believed Coleman was carrying a gun.[15] As a result, Officer Saint-Vil drew his taser.[16]

With one hand on the waistband of his pants, Coleman attempted to maneuver

---

[7] A200-01, A249.
[8] A249, A22.
[9] A202.
[10] A205.
[11] A206.
[12] Id.
[13] A206-07.
[14] Id.
[15] A208.
[16] Id.

from the street onto the sidewalk.[17]  He, however, lost control of his bike and fell to the pavement.[18]  Officer Saint-Vil ordered Coleman to stay down, but he failed to comply.[19]  Officer Saint-Vil attempted to deploy his taser, but it did not work.[20] Officer Wiggins then arrived and helped Officer Saint-Vil take Coleman into custody.[21]  An initial pat down of Coleman revealed a loaded firearm in the right waistband of his pants underneath his shirt.[22]

After placing Coleman in the back seat of the police car, Officer Saint-Vil noticed Coleman shifting around.[23]  Upon arriving at the police station, Officer Saint-Vil searched the back of the police car and found a drawstring bag with 93 bags of heroin inside.[24]  Coleman was the only person in the police car that day.[25]

### B. Leading up to trial

On December 7, 2015, a grand jury indicted Coleman on seven offenses: Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of Ammunition by a Person Prohibited ("PABPP"), Possession of Heroin—Tier 1 with Aggravating Factor, CCDW, Resisting Arrest, Bicycle Use at Night Without

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] A209.
[22] *Id.*, A210.
[23] A211.
[24] A212
[25] A283.

Headlamp, and Failure to Stay on the Right Side of Roadway.[26]

Coleman's trial counsel ("Trial Counsel") had just been assigned the case when Coleman decided to reject the offered plea deal at his final case review on April 1, 2016.[27]

On April 25, 2016, Trial Counsel filed a motion to sever the person prohibited charges.[28] The Trial Judge granted the motion before the start of the trial.[29]

**C. The Trial**

On April 28, 2016, the "A" case went to trial, and after a half-day of evidence, the State rested.[30] On April 29, 2016, the Trial Judge conducted a colloquy with Coleman who elected not to testify.[31] The defense did not present any evidence.[32] The State entered a *nolle prosequi* on the charge of Failure to Stay on the Right Side of Roadway.[33]

The State gave a closing argument outlining the elements of each charge and pointing to the relevant evidence.[34] For CCDW, the prosecution argued that the

---

[26] D.I. 2.

[27] A52. In the plea deal, the State sought to have Coleman declared a habitual offender on the PFBPP charge but would cap its recommendation to the mandatory minimum of 15 years at Level V. *Id*.

[28] A3, D.I. 21.

[29] A169.

[30] A283. The "A" case consisted of the following charges: Possession of Heroin, CCDW, Resisting Arrest, Bicycle Use at Night Without Headlamp, and Failure to Stay on the Right Side of Roadway.

[31] A292-94.

[32] A295.

[33] A350.

[34] A299-02.

firearm was a deadly weapon and Coleman had possession of it, because it was found on his person.[35] As to concealment, the prosecutor pointed out that the gun was not visible while Coleman was biking, when Officer Saint-Vil engaged him in a foot chase, nor when he was clutching the right side of his waist.[36] For the "knowingly" state of mind, the State averred that the weight and size of the gun was heavy and large enough that Coleman must have known that it was in the waistband of his pants.[37] Moreover, when explaining the "knowingly" state of mind required for CCDW, the prosecutor read directly from the CCDW charge, stating "[a] weapon— this will be in the jury instructions—may be concealed even though easily discoverable through routine police investigative techniques, which is exactly what happened here."[38] Thereafter, the State ended closing argument by asking the jury to find Coleman guilty on all counts.[39]

Between the time when the State ended its closing argument and when Trial Counsel began his closing argument, Trial Counsel proposed to Coleman the trial strategy of conceding guilt on the minor charges and attempting to get an acquittal

---

[35] A299.
[36] A300.
[37] A301.
[38] A302.
[39] A308.

on CCDW.[40]  Trial Counsel claims Coleman agreed.[41]  Notably, the record does not reflect that any break in trial occurred nor was a recess sought by Trial Counsel to discuss this trial strategy with Coleman.

Trial Counsel then began closing.  The relevant portions of Trial Counsel's closing are as follows:[42]

> You must harken back your memory to yesterday and decide for yourself, was there testimony whatsoever about whether the bicycle at issue was equipped with a lamp . . . there was very little in way of description of the bike itself.
>
> Do you remember anything about the color of the bike?
>
> Do you remember anything about the type of bike it was?  Was it a Huffy?  Was it a Schwinn?  Was it something else?
>
> Was there testimony about other [accoutrements] to the bike: reflectors, lights, lamp?  Anything else?  If you remember there being testimony in that regard, by all means find him guilty because that is part of the law.  You must have a light.  Just like a vehicle, a car, you might have a light at night.  So if you heard that and you remember that and you're convinced of that, you're firmly convinced that that was the testimony, by all means, do your duty and find him guilty.
>
> The second issue . . . is the resisting arrest charge.  There is a discussion of Officer Saint-Vil saying, Stop, may I talk to you?
>
> There was a discussion of Officer Wiggins saying, Stop, police.  And although I pointed out it wasn't in his police report, there's no reference to him saying, Stop, police.  He said, well, thinking about it, I remember

---

[40] D.I. 80.

[41] *Id*.  The Court notes there is a discrepancy regarding whether or not Coleman agreed to this strategy. For purposes of this memorandum opinion, the issue of whether or not he agreed does not change the analysis.

[42] The Court finds Trial Counsel's closing argument important enough to add in its majority.

him saying, Stop, police, as Mr. Coleman is riding alongside the vehicle.

He's yelling out the open windows, if you remember that testimony. You know what? We don't dispute that;

We don't dispute that he was fleeing from the police officers. So we invite you to find him guilty of resisting arrest.

But that's not the end of the story.

The [big-ticket] item is the carrying a concealed deadly weapon charge. And while I'm at it, find him guilty of the heroin charge, as well. Find him guilty of that, because that ties into the biggest item on the chart, and that's the carrying a concealed deadly weapon charge.

There is no argument that the weapon at issue was a firearm.

You saw it.

There was testimony that it, in fact, had a magazine and ammunition. No question that's a firearm.

Did Mr. Coleman have access to it somewhere on his person? Sure. Sure.

There was testimony that when he ran into the car, he fell to the ground. They did a [pat down]. It was somewhere on his person. They found it. Was it concealed?

Under the law, [the Trial Judge] will tell you that concealed—and I'll read it—means "the weapon is so situated upon or about the person carrying it as to not be discernable by those who would come near enough to see it in the usual associations of life by observation. Absolute invisibility is not required."

I ask you to question is absolute visibility required.

The next item or element that the State must prove is that it was

knowingly concealed. That is to say, was Mr. Coleman knowingly attempting to hide from view by others a weapon, a firearm?

If Mr. Coleman was, as the State would have you believe, aware that the police were chasing him—and we've conceded he was—was it his intention, was it his plan, to conceal the gun from view?

Well, given that we've conceded that he had in his possession a green Crown Royal bag containing 93 separate baggies containing heroin, an illegal substance under the law, given that fact, isn't it reasonable to suggest that what Officer Saint-Vil is seeing as he's pursuing the defendant from behind, Officer Saint-Vil said he was on foot pursuing the defendant as the defendant rode with one hand, his left hand on the handlebar and the other clutching his side, isn't it reasonable to conclude that Mr. Coleman knew his goose was cooked?

He knew the police were after him.

He knew he had in his possession 93 packets of illegal heroin.

Isn't it reasonable to conclude that's what he was gripping?

As for the gun, if he was concerned about the gun—and, incidentally, what's, on its face, illegal about possessing a gun?

Drugs, yes. What about a gun?

If he was really concerned about the implications of having a gun, weren't there many opportunities for Mr. Coleman to simply throw it away, discard it?

You remember Officer Saint-Vil say that he wasn't able to maintain visual contact of Mr. Coleman the entire time. There were times when he lost sight of him.

Wouldn't those times have provided Mr. Coleman an opportunity to discard that gun out of sight of the police as he's riding down the street, if that was his concern, and he knows there's a car following him, he knows there's someone on foot following him?

If he knows he's going to get caught with a gun and that has consequences for him, why keep it on him?

So, those are the two issues I'd ask you to consider.

Was it actually concealed, knowingly concealed? You heard that it was found around his waistband. But, was it on the outside? Was it thinly disguised inside? Those are questions you need to ask yourself.

And the second is did he knowingly conceal, or was it really the heroin he was hoping to hide from the police?

. . .

It's the State's burden to prove to your satisfaction all of those elements. And we've already conceded to two of those charges, the resisting arrest and the heroin.

So your work now begins with the consideration of those two other items: The bicycle and the carrying a concealed. [sic]

If, and only if, after deliberating on those issues you are firmly convinced of the defendant's guilt may you find him guilty . . . .[43]

Jury deliberations began around 11:17 a.m., and after four jury notes presenting questions to the Trial Judge, the jury announced its verdict at 3:21 p.m.[44] The jury found Coleman guilty of CCDW and Resisting Arrest but not guilty as to Possession of Heroin and Bicycle Use at Night Without Headlamp.[45]

---

[43] A309-17.
[44] A372. The questions posed to the Trial Judge during deliberations included: (1) clarification of the definition of "concealed," (2) an inappropriate legal analysis, (3) whether Trial Counsel's closing statements were enough to find Coleman guilty of the charges, and (4) an outline of thoughts without posing a true question. D.I. 59.
[45] A373-74. The "B" case consisted of Coleman's person prohibited charges. A424-25.

Following the "A" case, Coleman elected to have the "B" case proceed to a bench trial.[46] On July 29, 2016, the Trial Judge found Coleman guilty of PFBPP and PABPP.[47] On September 9, 2016, the State filed a motion to declare Coleman a habitual offender on the PFBPP and CCDW charges.[48] The Court granted the State's habitual offender motion[49] and sentenced Coleman to the habitual mandatory minimum of 23 years of unsuspended Level V time.[50]

Coleman appealed his conviction to the Delaware Supreme Court, and on April 5, 2018, the Delaware Supreme Court affirmed Coleman's conviction.[51]

### D. Postconviction Relief

On April 23, 2019, Coleman filed a motion for an extension of time to file his Postconviction Relief Motion due to not having access to a Delaware legal library and being incarcerated in Pennsylvania.[52] The Court granted his request and extended his filing deadline until June 24, 2019.[53] On June 25, 2019, Coleman filed his *Pro Se* Postconviction Relief Motion.[54] On July 25, 2019, the case was referred

---

[46] A376-78.
[47] A529-30. There was a delay between the "A" case and the "B" case due to an issue establishing Coleman's identity as the person in a previous Robbery Second Degree conviction upon which the State sought convictions for PFBPP and PABPP. A424-25.
[48] A538-43.
[49] A552, A544-45.
[50] A555-56, A558-62.
[51] *Coleman v. State*, 2018 WL 1673389, at *1 (Del. Apr. 5, 2018).
[52] D.I. 56.
[53] D.I. 57.
[54] D.I. 42. Even though Coleman's motion was a day late, the Court exercised its discretion and decided not to bar the postconviction motion on a procedural basis.

to a Commissioner for a Report and Recommendation.[55]   The Commissioner appointed conflict counsel to aid Coleman, and on January 15, 2020, directed that an amended postconviction relief motion be filed by April 14, 2020.[56]

On May 21, 2020, Coleman, with the help of postconviction relief counsel, filed the instant Motion.[57]  Shortly thereafter on July 8, 2020, Trial Counsel filed an affidavit.[58]  The State submitted a response to the Motion on August 5, 2020.[59]  On August 31, 2020, Coleman submitted a response to Trial Counsel's affidavit and the State's response.[60]

On September 14, 2020, the Commissioner filed her Commissioner's Report.[61]  On October 6, 2020, Coleman appealed the Commissioner's Report.[62] The Court granted an unopposed motion to extend the record on December 8, 2020.[63] On March 24, 2022, the Trial Judge then held a hearing to determine if an evidentiary hearing was needed and found one was necessary.[64]

This matter was reassigned from the Trial Judge to a second judge on October

---

[55] D.I. 45.
[56] D.I. 49.
[57] D.I. 51.
[58] D.I. 54.
[59] D.I. 58.
[60] D.I. 55.
[61] D.I. 59.
[62] D.I. 63.
[63] D.I. 65.
[64] D.I. 68.

12

17, 2022, and then reassigned to the Presiding Judge on October 18, 2022.[65]

On February 2, 2023, a status conference on the Motion was scheduled to commence.[66] Following an issued continuance, the conference was held on April 4, 2023, in which counsel agreed to schedule an evidentiary hearing.[67] Two extension requests were filed by the State and postconviction counsel respectively.[68] On January 25, 2024, following complications with the scheduling of an evidentiary hearing, the Presiding Judge approved a request for counsel to obtain written answers from Trial Counsel in lieu of an evidentiary hearing.[69] Trial Counsel's written answers ("Affidavit") were submitted to the Court on April 25, 2024.[70] The Court now reviews the Motion and Coleman's Appeal.

## LEGAL ANALYSIS

Under 10 *Del. C.* § 512(b)(1), the Court may designate a commissioner to review a postconviction relief motion and provide a report and recommendation to the Court.[71] Parties may then submit objections to the Commissioner's finding.[72] The Court shall then "make a *de novo* determination of those portions of the report

---

[65] D.I.s 70, 71.
[66] D.I. 72.
[67] D.I. 75.
[68] D.I. 77.
[69] D.I. 79.
[70] D.I. 80.
[71] 10 *Del. C.* § 512(b)(1)b.
[72] 10 *Del. C.* § 512(b)(1)d.

or specified findings of fact or recommendations to which an objection is made."[73]

Following review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Commissioner."[74]

## A. Rule 61 Procedural Bars

The Court reviews a postconviction relief motion under Superior Court Criminal Rule 61.[75] Pursuant to Rule 61, an incarcerated individual may seek suspension of his conviction by establishing a lack of jurisdiction or alternate ground that sufficiently creates a collateral attack upon the conviction.[76] However, Rule 61 contains procedural bars that prohibit defendants from having "unlimited opportunities to relitigate their convictions."[77]

Prior to a review of any meritorious basis for a postconviction relief motion, the motion must first survive the procedural bars.[78] Under Rule 61(i), four procedural bars exist.[79] Rule 61(i)(1) requires a motion for postconviction relief to be filed within one year of a final judgment or conviction.[80] Rule 61(i)(2) bars successive motions for postconviction relief,[81] and pursuant to Rule 61(i)(3) and

---

[73] *Id.*; *State v. Bartell*, 2020 WL 6480845, at *1 (Del. Super. Nov. 4, 2020).
[74] *Id.*
[75] Super. Ct. Crim. R. 61(a)(1).
[76] *Id.*
[77] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[78] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[79] Super. Ct. Crim. R. 61(i)(1)-(4).
[80] Super. Ct. Crim. R. 61(i)(1).
[81] There are two exceptions to Rule 61(i)(2). Rule 61(i)(2) bars successive or subsequent motions for postconviction relief unless the movant is able to "pled with particularity" that (i) "new

14

(4), any ground for relief not previously raised is deemed waived and any claims formerly adjudicated are thereafter barred.[82]

There is an exception to the Rule 61(i)(3) procedural bar to relief. Procedural default may be overcome if the movant shows "(A) cause for relief from the procedural default and (B) prejudice from violation of the movant's rights."[83] A "cause" for relief from procedural default can be shown through an ineffective assistance of counsel claim ("IAC").[84] IAC claims cannot be raised at any earlier stage in the proceedings and are properly presented through a motion for postconviction relief.[85]

Because Coleman brings an IAC claim, this is his first postconviction relief motion,[86] and the motion was timely filed[87]; Coleman's Motion is not procedurally barred and warrants review on its merits.

evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid." Super. Ct. Crim. R. 61(d)(2).

[82] This includes proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding. *See* Super. Ct. Crim. R. 61(i)(5), (d)(2)(i), (ii).

[83] Super. Ct. Crim. R. 61(i)(3)(A), (B).

[84] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[85] *Sabb v. State*, 2021 WL 2229631, at *1 (Del. May 28, 2021); *Green v. State*, 238 A.3d 160, 187-188 (Del. 2020); *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[86] D.I. 42.

[87] Coleman's conviction became final when the Supreme Court affirmed his conviction on April 5, 2018. D.I. 41. Coleman filed for an extension of time, which the Court granted, resetting his deadline for June 24, 2019. D.I.s 56, 57. A placeholder motion was received by chambers on June

**B. IAC Claim**

Coleman appealed the Commissioner's Report, arguing that the *Strickland* test utilized by the Commissioner in denying his Motion was incorrect and that the *Cronic/Cooke* test applies.[88] Coleman posits that under the *Cronic/Cooke* test prejudice is presumed and Trial Counsel's decisions to (1) concede guilt during closing argument to certain charges and (2) employ a clearly deficient strategy to fight the remaining ones were objectively unreasonable.[89]

### 1. *Cronic/Cooke* Test

The Court agrees with the Commissioner that the *Strickland* test applies. The primary framework for examining IAC claims falls under *Strickland v. Washington*.[90] *Strickland* consists of a two-part test where the defendant must show that: (1) counsel's conduct fell below an objective standard of reasonableness (the "performance prong") and (2) but for counsel's errors, there was a reasonable probability that the proceeding would have rendered a different result (the "prejudice prong"). However, the Court will presume the defendant has satisfied the prejudice

---

21, 2019, but not docketed until June 25, 2019. D.I. 42. Because of this, the Court used its discretion to consider the Motion timely. D.I. 59.
[88] D.I. 63.
[89] *Id.*
[90] 466 U.S. 668 (1984).

16

prong if the defendant demonstrates that his case falls within one of the specified categories of the *Cronic/Cooke* test.

The United States Supreme Court in *Cronic* (adopted by the Delaware Supreme Court and applied in *Cooke v. State*[91]) articulated three exceptions for when *Strickland*'s prejudice prong is deemed presumed.[92] The exceptions are: (1) when there is a complete denial of counsel, (2) when counsel fails to subject the prosecution's case to meaningful adversarial testing, or (3) where counsel is asked to provide assistance in a circumstance where competent counsel could not.[93]

The Commissioner in her Commissioner's Report did not find that *Cronic/Cooke* applied to presume prejudice.[94] Specifically, the Commissioner stated there was nothing wrong with the trial strategy of conceding charges in a defense counsel's closing argument and the decision to do so did not trigger the presumption of prejudice under *Cronic/Cooke*.[95] She then applied the *Strickland* test and found that Coleman could not satisfy either prong.[96]

Coleman argues that his case falls under the second exception in *Cronic*: when counsel fails to subject the prosecution's case to meaningful adversarial testing.[97]

---

[91] *Cooke v. State*, 977 A.2d 803, 848 (Del. 2009).
[92] 466 U.S. at 659.
[93] *U.S.* v. *Cronic*, 466 U.S. 648, 659-60 (1984).
[94] D.I. 59.
[95] *Id.*
[96] *Id.*
[97] D.I. 63.

The Delaware Supreme Court has previously held in *Cooke* that certain fundamental decisions, such as the right to plead guilty are left up to the defendant.[98]  In *Cooke*, the Delaware Supreme Court found that the defendant was deprived of meaningful adversarial testing when defense counsel urged the jury to find the defendant guilty but mentally ill despite the defendant's continued desire to plead not guilty.[99]  The Delaware Supreme Court found that the decision to plead guilty, innocent, or *nollo contendre* is so profoundly important that for counsel to do so against a defendant's wishes constitutes a constitutional violation and, as a result, prejudice is presumed in the *Strickland* analysis.

Notably, the decision to make everyday strategic tactical decisions rests with the attorney.[100]  Strategic decisions made by an attorney fall within the purview of *Strickland* and defendants must establish both the performance prong and the prejudice prong.

Coleman's case is similar to *Florida v. Nixon*, in which the United States Supreme Court explained that "although defense counsel is obligated to discuss potential strategies with the defendant, 'when counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule

---

[98] *Cooke,* 977 A.2d at 840-41.
[99] *Id*.
[100] *Id*. at 840.

demanding the defendant's explicit consent.'"[101]   In *Nixon*, defense counsel explained his strategy to the defendant several times prior to trial and the defendant did not say anything affirmative or negative regarding the proposed strategy.[102] The United States Supreme Court held that the defendant's silence was not enough to trigger *Cronic*'s presumption of prejudice.[103]   Specifically, the United States Supreme Court cautioned, "[t]he reasonableness of counsel's performance, after consultation with the defendant yields no response, must be judged in accord with the inquiry generally applicable to ineffective-assistance-of-counsel claims," and whether counsel's conduct "fell below an objective standard of reasonableness."[104] In that context, the Court found that the case should be reviewed under *Strickland*.[105]

It is unquestionable that trial attorneys are allowed to use the strategy employed here by Trial Counsel and does not necessarily implicate *Cronic/Cooke*.[106] *Cronic/Cooke* applies in instances where an attorney has completely gone against the wishes of their client and plead him guilty during trial on *every* charge.  While perhaps Trial Counsels' strategy was fruitless, in reviewing these claims, the Court

---

[101] 543 U.S. at 192 (internal citations omitted) (emphasis in original).
[102] *Id*. at 186.
[103] *Id*.
[104] *Id*. at 178 (emphasis added).
[105] *Id*. at 179.
[106] *See Normal v. State*, 2013 WL 6710794, at *3 (Del. Super. Dec. 17, 2013); *State v. Johnson*, 2002 WL 130537, at *6 (Del. Super. Jan. 31, 2002); *State v. Morse*, 2016 WL 3044734, at *5 (Del. Super. May 11, 2016).

must "avoid peering through the lens of hindsight."[107]  While Coleman may be unhappy with the result or Trial Counsel's defense of him, the implementation of a strategy to concede to certain charges does not wholistically deprive Coleman of any adversarial testing.

Under *Cronic*, "the adversarial process protected by the Sixth Amendment requires the accused have counsel acting in the role of advocate."[108]  When Trial Counsel fails to act in the role of advocate, a defendant's case is deprived of the opportunity to subject the State's case to the "crucible of meaningful adversarial testing."[109]  Trial Counsel's performance did not arise to such dereliction.  He argued against—and received an acquittal on—the Bicycle Use at Night Without Headlamp charge.[110]  Further, while the implementation of Trial Counsel's strategy was faulty, he did argue that Coleman should not be convicted of the CCDW charge which Coleman sought to fight at trial. As a result, Coleman was not deprived of meaningful adversarial testing and the Court agrees with the Commissioner that *Strickland* applies.

### 2. Trial Counsel's Conduct was Objectively Unreasonable

The first prong in the *Strickland* analysis is whether Trial Counsel's conduct

---

[107] *State v. Wright*, 653 A.2d 288, 295 (Del. Super. 1994).
[108] *Cronic*, 466 U.S. at 656.
[109] *Id*.
[110] A373-74.

was objectively unreasonable. The Court finds that it was. Trial Counsel's chosen strategic path was objectively unreasonable in light of Coleman's desire to go to trial.

While strategic decisions rest within the purview of the attorney, the discretion afforded to counsel is subject to some parameters. "Where deficiencies in counsel's performance are severe and cannot be categorized as the product of strategic judgment, ineffectiveness may be clear."[111] The operative question here is "not whether counsel's choices were strategic, but whether they were reasonable."[112]

Here, the *execution* of Trial Counsel's strategy is what exceeds the bounds of reasonableness. Trial Counsel conceded the only arguable elements of the CCDW offense that could create a question of fact and chose to fight elements that unequivocally pointed to guilt. When Coleman agreed to Trial Counsel's proposed strategy, he did so to fight the CCDW charge. In his Affidavit, Trial Counsel explains, "It was my recommendation that the focus during closing argument should be to attempt to obtain an acquittal with respect to the CCDW charge, particularly given the perceived gap in evidence regarding the circumstances underlying the gun charge."[113]

Title 11 of the Delaware Code Section 1442 provides, "A person is guilty of

---

[111] *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 943 (3d Cir. 2019).
[112] *Roe v. Flores-Oretega*, 528 U.S. 470, 481 (2000).
[113] D.I. 80.

carrying a concealed deadly weapon when the person carries concealed a deadly weapon upon or about the person without a license to do so . . . ."[114] Broken down, this charge requires the prosecution to show four elements: (1) there was a deadly weapon, (2) the defendant carried the weapon, (3) the weapon was concealed, and (4) the defendant acted knowingly.[115]

Trial Counsel expressly conceded the first two elements, constructively conceded the third, and misstated the fourth, despite Coleman's desire to seek acquittal on the charge. In his closing, Trial Counsel admits to the first element by stating, "There is no argument that the weapon at issue was a firearm. You saw it. There was testimony that it, in fact, had a magazine and ammunition. No question that's a firearm."[116] He admitted to the second element: "Did Mr. Coleman have access to it somewhere on his person? Sure. Sure."[117]

The jury then heard the third element: concealment. The jury instructions included that "a weapon is concealed if it is so situated on or about the person carrying it as not to be discernible by those who would come near enough to see it in the usual associations of everyday life by ordinary observation,"[118] but to police officers, "a weapon may be concealed even though easily discoverable through

---

[114] 11 *Del. C.* § 1442.
[115] A299-00.
[116] A312.
[117] A313.
[118] A326.

22

routine police investigative techniques."[119] The State presented evidence that the police officers did not see the firearm prior to the pat down.[120] Rather than fighting the State's assertion, Trial Counsel argued, "There was testimony that when he ran into the car, he fell to the ground. They did a pat down. It was somewhere on his person. They found it."[121] This argument conceded the third element.

Trial Counsel then moves on to the fourth element: the knowing state of mind. He argued that the State must prove the firearm "was knowingly concealed. That is to say, was Mr. Coleman knowingly attempting to hide from view by others a weapon, a firearm? If Mr. Coleman was, as the State would have you believe, aware that the police were chasing him—and we've conceded that he was—was it his intention, was it his plan, to conceal the gun from view?"[122] He then proceeded to say,

> What's, on its face, illegal about possessing a gun? . . . If he knows he's going to get caught with a gun and that has consequences for him, why keep it on him? So, there are two issues I'd ask you to consider. Was it actually concealed, knowingly concealed? You heard that it was found around his waistband. But, was it on the outside? Was it thinly disguised inside? Those are the questions you need to ask yourself . . . And the second is did he knowingly conceal, or was it really the heroin he was hoping to hide from the police?[123]

---

[119] *Id.*
[120] A205-06.
[121] A313.
[122] A313-14.
[123] A314-15.

In defense of his closing argument, Trial Counsel explains:

Following the close of the State's case-in-chief and following the State's closing argument, it was clear that the prosecution had not established—let alone suggested—that the firearm that was found within the clothing of Mr. Coleman's person during a search incident to arrest was unlawfully possessed or controlled. In particular, the State did not introduce evidence or offer any argument during closing that Mr. Coleman was a person prohibited from possessing a firearm. Nor would the State have been permitted to do so. (As a notable aside, Mr. Coleman—who had one or more prior felony convictions—elected not to testify). Further, there was no evidence presented that Mr. Coleman did not have a "concealed carry" license or other category of license with respect to the firearm. Accordingly, it seemed logical to argue to the jury that the gun was lawfully possessed.[124]

There are multiple issues with the application of this strategy that make it unreasonable. First, Trial Counsel misstates the law transforming the burden from knowingly to intentionally with his statement, "[W]as it his intention, was it his plan, to conceal the gun from view?"[125] Second, his statement alludes to the fact Coleman *knew* that he had a gun on his person—the requisite mental state—and it was not his *intention* to hide it. His closing continued, arguing that Coleman did not throw away the gun when being chased by the police,[126] ending with "[W]hat's, on its face,

---

[124] D.I. 80.
[125] A313-14.
[126] A314-15.

24

illegal about possessing a gun?"[127]  This rhetorical question presents a two-fold problem.  First, it essentially admits that Coleman knowingly had a gun.  Second, Trial Counsel attempts to attack concealment on the untenable basis that Coleman legally possessed the gun.

Coleman's trial was bifurcated with the person prohibited charges coming in during the "B" case.[128]  As such, the State was unable to introduce Coleman's prior felony conviction without substantial prejudice to Coleman in the "A" case.[129]  Trial Counsel knew that Coleman was a person prohibited.[130]  By arguing that Coleman was in legal possession of the gun, Trial Counsel opened the door for the State to introduce Coleman's prior conviction to show that he was a person prohibited.  While the State did not choose to do so, Trial Counsel staked his position on a refutable argument, thus toeing the line of malpractice by utilizing the trial's bifurcated barrier to serve his indefensible argument.  Expressly and constructively conceding all four elements to the CCDW charge cannot be objectively reasonable.  Nor could it have been within the bounds of a reasonable strategy to fight the CCDW charge by conceding the elements of the offense.  Hence, the Court finds that Trial Counsel was objectively unreasonable in the application of his strategy in defense

---

[127] A314.
[128] D.I. 26.
[129] *Id.*
[130] A314; D.I. 80.

of Coleman.

### 3. Coleman is Unable to Show Prejudice

The second prong in the *Strickland* analysis is that the defendant must show actual prejudice.[131] This is typically the factor upon which defendants fall short on their IAC claims. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[132] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[133] The defendant must "make concrete allegations of actual prejudice and substantiate them or risk summary dismissal."[134]

Coleman cannot establish prejudice because he cannot show that absent Trial Counsel's errors, the result of the trial would have been different. The State brought a strong case against Coleman. For CCDW, there was a solid record replete with overwhelming evidence upon which to find Coleman guilty. The officers testified and readily established that (1) the firearm was a deadly weapon, (2) the firearm was found on Coleman's person, (3) officers were unable to see the gun in the waistband of Coleman's pants until they performed a pat down, and (4) he knowingly possessed

---

[131] *Strickland*, 466 U.S. at 668.
[132] *Id*. at 694.
[133] *Id*. at 693-94.
[134] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998).

the gun by repeatedly reaching for the waistband of his pants while he was attempting to ride away on his bicycle.[135] For the Resisting Arrest charge, the State presented evidence that officers with clearly discernable police attire directed Coleman to stop, but he did not.[136] Instead, he rode his bicycle away and attempted to jump a curb from the street in order to evade officers. Officers had to deploy a taser and wrestle him to the ground in order to effectuate an arrest.[137] For possession, the State presented evidence that the heroin was in Coleman's possession; it was found in the back of the police car, and no one else had been in the rear of the car except for Coleman.[138] Therefore, even without Counsel's errors, the State provided a strong enough case that a jury would likely have reached the same result, even without Trial Counsel's errors.[139]

The Court finds that under *Strickland*, Coleman is unable to show prejudice and thus, his postconviction motion must be **DENIED.**

## CONCLUSION

Coleman was not deprived of meaningful adversarial testing when Trial Counsel employed the strategy of conceding guilt to two of the charges in his closing

---

[135] A299-302.
[136] *Id.*
[137] *Id.*
[138] *Id.*
[139] Moreover, even though Trial Counsel conceded guilt on the heroin and resisting arrest charges, the jury acquitted Coleman. Hence, no prejudice can be claimed as to those charges.

statement. Therefore, the *Strickland* test applies, and while Trial Counsel is found to be objectively unreasonable for conceding all the elements of the CCDW charge for which Coleman sought acquittal, Coleman is unable to establish the prejudice prong. For these reasons, the Commissioner's Report and Recommendation is **ACCEPTED** and Coleman's Motion for Postconviction Relief is **DENIED.**

    **IT IS SO ORDERED,** this 15th day of July, 2024.

_____
Sheldon K. Rennie, Judge

Original to Prothonotary